UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON SWARM, | |
| Petitioner, | Case No. 1:13-CV-00183-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration, | |
| Respondent. | |

## INTRODUCTION

Currently pending before the Court for consideration is Petitioner Jason Swarm's

("Petitioner") Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits,

filed April 15, 2013. The Court has reviewed the Petition for Review and the Answer, the

parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will

affirm the Commissioner's decision.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental

Security Income on October 20, 2008, claiming disability beginning May 1, 2006, caused by

back pain. This application was denied initially and on reconsideration. Hearings were conducted

on November 19, 2010, May 12, 2011, and July 27, 2011, before Administrative Law Judge ("ALJ") Lloyd Hartford. The first hearing was continued to allow time for Petitioner to obtain counsel and undergo a mental consultative examination. At the second hearing, Petitioner was represented by counsel, and the ALJ heard testimony from Petitioner, Petitioner's uncle, and Petitioner's examining physician, Dr. Nilsson. At the supplemental hearing on July 27, the ALJ heard testimony from vocational expert Kent Granat and medical expert Margaret Moore. ALJ Hartford issued a decision finding Petitioner not disabled on August 29, 2011. Petitioner timely requested review by the Appeals Council, which denied his request for review on February 20, 2013.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time Petitioner filed his application, he was thirty four years of age. Petitioner was born in 1974. Petitioner obtained his GED, and he has no significant prior work experience given lengthy periods of incarceration.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date, which was amended to October 20, 2008. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's degenerative disc disease of the lumbar spine, obesity, depressive disorder, and antisocial personality features severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The

ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listings 1.04, 12.04, and 12.08. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

Although Petitioner had some work experience as a flagger and landscaper, the ALJ found Petitioner had not engaged in any past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ determined Petitioner retained the RFC to perform light work, and Petitioner could perform such occupations as garment folder, housekeeping cleaner, cleaner polisher, dowel inspector, waxer, and brimer.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

**MEMORANDUM DECISION AND ORDER - 3**

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them,

**MEMORANDUM DECISION AND ORDER - 4**

the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner believes the ALJ erred at steps three and four. First, Petitioner argues the ALJ should have found Petitioner met or medically equaled Listings 12.02, 12.04, 12.06, and 1.04 based upon the testimony of Dr. Nilsson. Second, Petitioner contends the ALJ failed to properly develop the record or consider the evidence, because Petitioner's demeanor at the hearing and the State of Idaho's vocational rehabilitation records support a finding of disability; the ALJ improperly refused to grant counsel's request to subpoena the consultative examiner; and, the ALJ did not properly develop testimony from the vocational expert. Next, Petitioner finds fault with the ALJ's assessment of Petitioner's credibility. And finally, Petitioner contends the ALJ erred when evaluating the medical source opinions.[1]

### 1.      Meet or Equal a Listing

If the claimant satisfies the criteria under a listing <u>and</u> meets the twelve month duration requirement, the Commissioner must find the claimant disabled without considering age, education and work experience.  20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that his impairments meet or equal any particular listing. *Bowen v. Yuckert,* 482 U.S 137, 146, n. 5

---

[1] Petitioner asserted also that he was denied due process as a result of the above errors. However, Petitioner's arguments regarding due process relate to the merits of the decision, which is not a proper ground for asserting violation of due process. *See Evans v. Chater*, 110 F.3d 1480, 1482 (9th Cir. 1997) (explaining that appeal may be taken on due process grounds for procedural errors, but not regarding the merits of the prior decision or the means by which the decision was reached.). Petitioner had a meaningful opportunity to be heard in this matter, given three hearings were held, he was represented by counsel, and he has not been prevented from seeking reconsideration in this Court of the adverse benefits determination. *See Id.* at 1482-83.

**MEMORANDUM DECISION AND ORDER - 5**

(1987). Further, if the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or other, as to how his combined impairments equal a listing. *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001).

An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant…." 20 C.F.R. § 404.1526(a), (c). Further, equivalence depends on medical evidence only; age, education, and work experience are irrelevant. *Id.* at § 404.1526(c). Finally and critically, "the claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694-95 (9th Cir. 1985)).

A.  ***Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.06 (Anxiety Related Disorders)***

For a claimant to meet Listings 12.02, 12.04, or 12.06, he must show that he has marked restrictions[2] "in at least two" of the following categories listed in Part B:[3]

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

---

[2] Marked means "more than moderate, but less than extreme." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C).

[3] The Part B criteria are the same for each of the three listings, and to satisfy any one of the listings, a claimant must meet both the Part A and Part B criteria. Petitioner finds fault only with the ALJ's consideration of the Part B criteria.

Petitioner argues the ALJ erred in his consideration of the evidence, because if it was considered properly, the evidence supports a finding of marked limitations in the areas of activities of daily living and social functioning, thereby meeting the Part B criteria in each of the three listings. For example, Petitioner contends photographs of Petitioner's residence, submitted post-hearing, reflected a disheveled home indicating Petitioner was unable to carry out activities of daily living. Further, Petitioner contends the ALJ failed to follow certain provisions of the agency's POMS in his consideration of the evidence supporting Petitioner's mental impairments, because the POMS manual indicates that the inability to maintain a home environment in a socially acceptable manner is a reflection of severe deficiencies in social functioning.

First, "POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir.2010). Rather, POMS and the interpretations in it "are 'entitled to respect,' but 'only to the extent that those interpretations have the power to persuade.'" *Id.* (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (internal quotations omitted)). The persuasive force of the guidance provided in POMS depends on "the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements," among other factors. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). One additional factor is the extent to which an interpretation in POMS relates to a regulation that imposes a mandatory

obligation or merely requires "consideration" of certain evidence. *Lockwood*, 616 F.3d at 1072–73.

Here, the POMS manual merely requires consideration of certain evidence, which the ALJ properly considered. That Petitioner disagrees with the ALJ's interpretation of the evidence is not the standard upon review. Rather, the standard is whether substantial evidence supports the ALJ's decision, which it does.

In assessing the first category, activities of daily living, those activities include cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for one's grooming and hygiene, using telephones and directories, and using a post office, among other activities. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1); POMS § DI 22511.005. There was substantial evidence in the record, which the ALJ discussed (AR 15), supporting the ALJ's determination that Petitioner suffered only mild restriction in his activities of daily living. The ALJ noted Petitioner used his bicycle for transportation, was able to ride the bus independently, shopped and cooked for himself, and did household chores. (AR 15.)[4] As an example, Petitioner testified that he visited the library, (AR 100), and rode his bike from his house to the bus stop so he could arrive at the hearing by himself on November 19, 2010 (AR 104).

---

[4] That other evidence exists to support Petitioner's argument that he suffered marked limitations in his activities of daily living, such as photographs of Petitioner's unkempt house and the state of his clothing on a given day, is not sufficient to carry the day. "[T]he ALJ's interpretation of [his] testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

**MEMORANDUM DECISION AND ORDER - 8**

Next, Petitioner finds fault with the ALJ's failure to consider Petitioner's inability to maintain his home environment in a socially acceptable manner as sufficient evidence to support a finding of marked difficulty in maintaining social function. However, POMS § DI 22511.005, upon which Petitioner relies, indicates that social function should be evaluated on the basis of social appropriateness, independence, sustainability, and quality. *See also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1200(C)(2). The ALJ found Petitioner had moderate difficulties in social functioning, which determination is supported by substantial evidence in the record. The ALJ discussed that Petitioner lived independently in a trailer and visited with his family, which included regular social interactions with his uncle five times each week. (AR 15.)

Finally, Petitioner contends the ALJ failed to properly consider the evidence regarding Petitioner's difficulty maintaining concentration, persistence, or pace. Pet. Brief at 18 (Dkt. 16). Petitioner argues the ALJ failed to consider that Petitioner fell asleep during the July 27, 2011 hearing, frequently shifted positions, and often appeared for his vocational rehabilitation appointments unkempt and disheveled. Further, Petitioner cites the significant deficits in his cognitive abilities.

Again, that there may be evidence to support a contrary interpretation of the evidence is not the standard. The ALJ concluded Petitioner had moderate difficulties with regard to concentration, persistence, or pace. There was substantial evidence in the record to support that conclusion, which evidence included psychological testing conducted in December of 2010 indicative of an average range of intellectual functioning. (AR 15,

513.) The conclusions reached by Dr. Morgan after performing psychological testing and discussed by the ALJ included findings that Petitioner could understand and communicate; his memory was within normal limits; and, he could sustain concentration and persist in tasks requiring those abilities. (AR 15.) The record adequately supports the ALJ's conclusion that Petitioner suffers moderate difficulties.

**B.    *Listing 1.04***

Petitioner argues he meets or medically equals the criteria of Listing 1.04. Pet. Brief at 17-18 (Dkt. 16.) To meet this listing, a claimant must demonstrate he suffers from:

> "degenerative disc disease…resulting in compromise of a nerve root or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The evidence of record consists of an MRI report dated September 8, 2008. (AR 498.) The ALJ comprehensively covered the findings in the MRI, which noted no evidence of nerve root compromise or compression; no evidence of spinal arachnoiditis;

and, no evidence of lumbar spinal stenosis. The ALJ considered also the substantial evidence in the record concerning Petitioner's ability to ambulate effectively, as defined in Section 1.00B2b. The inability to ambulate effectively is "defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device." There was no evidence in the record that Petitioner used any type of assistive device. Further, the ALJ considered physician's notes that indicated Petitioner walked from the examination room with a non-antalgic gait on June 8, 2011, and he was able to fully squat, perform a sit to stand motion with no difficulty, and that his straight leg raise test was negative. (AR 526.)

Petitioner attempts to introduce evidence of a second MRI taken December 17, 2012. (Dkt. 16, Ex. A.) Petitioner contends this exhibit was "excluded from the official record." There is no evidence that the ALJ did not permit augmentation of the record at the time, and no evidence that the MRI report was submitted to the Appeals Council for review. Therefore, not only is the additional evidence well beyond the period of consideration, the Court need not consider it because it is not part of the administrative record. *Brewes v. Comm'r of Soc. Sec. Admin*, 682 F.3d 1157, 1162 (9th Cir. 2012).

Petitioner next contends that his obesity, in combination with his low back pain, is equivalent to Listing 1.04 because he cannot ambulate effectively. Petitioner argues that "snapshots" of Petitioner's ability to walk are insufficient evidence here, because

Petitioner's obesity, coupled with his back pain, contributes to Petitioner's inability to walk more than one block.[5]

Petitioner cites to no evidence in the record indicating Petitioner is unable to ambulate effectively within the meaning of the regulations. Other than claiming that a "snapshot" of Petitioner's ability to walk out of the exam room on June 8, 2011, is insufficient, Petitioner offers no other evidence to overcome the ALJ's consideration of the substantial evidence of record that Petitioner had no difficulties walking, riding a bike, shopping, or otherwise being able to use public transportation. In other words, Petitioner seems to forget that there must be evidence of his alleged inability to walk. Petitioner may not simply discredit the evidence in the record.

As for Petitioner's contention that the ALJ failed to consider his obesity, the ALJ states that he considered the effect of Petitioner's obesity pursuant to SSR 02-01p. (AR 15.) Because obesity is not a separately listed impairment, a claimant will meet the listing requirements if "there is an impairment that, in combination with obesity, meets the requirements of a listing." SSR 02–01p (2002). Equivalence is determined if a claimant's multiple impairments (including obesity) none of which meet the listing requirement, but which when viewed in the aggregate are equivalent to a listed impairment. *See id*. The Rule, however, explains:

> [An ALJ] will not make assumptions about the severity or functional
> effects of obesity combined with other impairments. Obesity in

---

[5] Petitioner claims his obesity also contributes to him meeting Listing 12.04 and 12.08, which listings pertain to affective disorders and personality disorders, but fails to articulate how other than pointing to his inability to ambulate effectively. Pet. Brief at 16 (Dkt. 16.)

**MEMORANDUM DECISION AND ORDER - 12**

combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record.

Although Petitioner contends the ALJ erred by not considering obesity when determining whether he meets or equals a listed impairment, Petitioner fails to set forth any evidence to support the diagnosis and findings of a listed impairment, as explained above. Further, the ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Petitioner fails to offer "any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment," *id.*, other than his conclusory statements that they do. There is, accordingly, no error by the ALJ.

## 2.     Development of the Record and Consideration of the Evidence

The ALJ has a duty to develop the record even when the claimant is represented by counsel. *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). Even if there is evidence to the contrary, such does not negate the substantial evidence in the record as a whole in support of the ALJ's determination. If the evidence before the ALJ is subject to more than one rational interpretation, the Court must defer to the ALJ's conclusion. *Batson v. Comm'r of Soc. Sec. Admin*, 559 F.3d 1190, 1198-99 (9th Cir. 2004). The ALJ need not discuss all evidence presented to him. Rather, he must explain why "significant probative evidence

has been rejected." *Vincent ex. Rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).

The failure to discuss certain evidence does not require remand. *Vincent*, 739 F.2d

at 1394. Here, the evidence which the ALJ allegedly ignored was neither significant nor

probative.  First, Petitioner contends that because he fell asleep during the three hour

hearing and shifted positions throughout, such behavior demonstrates Petitioner's

inability to maintain concentration, persistence, or pace. However, Petitioner has failed to

explain how such behavior during a three hour hearing translates to the inability to work

at the occupations the ALJ ultimately found Petitioner able to perform. Nor does

Petitioner explain how such behavior is inconsistent with the ALJ's RFC finding.

Next, Petitioner argues the ALJ's decision failed to properly consider the State of

Idaho's determination of Petitioner's eligibility for vocational rehabilitation services. But

the ALJ included an extensive discussion about the vocational rehabilitation records. (AR

18.)  The ALJ noted Vocational Rehabilitation determined that, although Petitioner's

disabilities were chronic, they were stable and Petitioner could work. (AR 18, citing Ex.

10F at AR 577-604.) And, the ALJ incorporated the findings by vocational rehabilitation

services into his RFC finding.[6]

Finally, Petitioner argues the ALJ failed to properly investigate and evaluate

---

[6] The ALJ cited the disability services' determination that Petitioner suffered from functional limitations requiring no repetitive bending/twisting/stooping; may occasionally lift up to 25 lbs., frequently lift 15 lbs., and continuously lift 10 lbs.;  no prolonged low frequency vibration; ad lib position changes; and no high impact or strenuous activities. (AR 18, 601.) These limitations were incorporated into the ALJ's RFC finding. (AR 16.)

evidence, citing Petitioner's "well-documented medical history that reflects Petitioner's significant deficits in reasoning and problem solving" such that the ALJ should have determined Petitioner had "marked restrictions" in the activities of daily living. However, it is not for the Court to second-guess the ALJ's resolution or consideration of the evidence. The Court discussed above the ALJ's findings in this regard in the context of Listings 12.02 and 12.04. Further, although Petitioner argues the ALJ failed to properly investigate, Petitioner has not provided any evidence or argument that the duty to do so was triggered. The duty to "conduct an appropriate inquiry" is triggered only upon a finding that the evidence is ambiguous or the record is inadequate. *Widmark v. Barnhart*, 454 F.3d 1063, (9th Cir. 2006). Petitioner has demonstrated neither.

A. *Credibility*

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Where, as here, a claimant produces medical evidence of an underlying impairment that is reasonably expected to

produce some degree of the symptoms alleged and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and,

treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec.
Ruling 96-7p.

###    B.    *Circular Reasoning*

Petitioner first contends the ALJ used "circular reasoning" when he concluded
Petitioner's medically determinable impairments "could reasonably be expected to cause
the alleged symptoms; however, the claimant's statements concerning the intensity,
persistence and limiting effect of these symptoms are not credible to the extent they are
inconsistent with the above residual functional capacity assessment." Pet. Brief at 20-21
(Dkt. 16); (AR 17).  While Petitioner may be correct that the ALJ made the above
statement, that is as far as Petitioner's argument goes. The ALJ's statement is
inappropriate and inadequate *only if* the ALJ does not also provide sufficient reasons
supporting a finding that a claimant is not wholly credible. *Medeiros v. Astrue*, No. 3:11-
cv-00386-JE, 2012 WL 6929275 at *8 (Dec. 27, 2012). The ALJ provided extensive
analysis and support for his conclusion that Petitioner lacked credibility about the
limiting effects of his symptoms, citing the inconsistencies in the record as a whole and
discussing the medical findings; the MRI results; vocational rehabilitation's functional
assessment; and, Petitioner's own statements that he could ride a bicycle without
difficulty. (AR 17-20.) Further, the ALJ developed the record regarding Petitioner's
alleged mental impairments, discussing Petitioner's psychological testing results
indicating average mental performance, and comparing those recent results obtained in
2010 with similar results from when Petitioner was thirteen years of age. (AR 20-22.)

There was no error.

**C.  *Counsel's Request to Subpoena Medical Consultant***

Petitioner argues the ALJ erred by refusing Petitioner's counsel's request to subpoena and cross-examine Dr. Chicoine, who examined Petitioner in June of 2011. Petitioner sought to cross examine Dr. Chicoine because the doctor noted in his findings that Petitioner did not note "signs of anxiety," yet Dr. Chicoine was consulted to assess Petitioner's functional limitations. The ALJ denied counsel's request, stating he would not rely on Dr. Chicoine's "statement that he did not know the signs or symptoms of anxiety at the time he examined him to make a determination of whether or not the claimant is disabled based on anxiety." (AR at 47.) In other words, the medical opinion regarding Dr. Chicoine's assessment of Petitioner's anxiety was not crucial to the ALJ's decision, and there was no error. *See Solis v. Schwieker*, 719 F.2d 301, 302 (9th Cir. 1983) (an ALJ abuses his discretion when he denies a claimant's request to cross examine a medical source where that source's report is "crucial" to the ALJ's decision).

**D.  *Vocational Expert Testimony***

Petitioner argues the ALJ "failed to properly develop the expert testimony regarding Petitioner's ability to perform competitive work at a SGA level." Pet. Brief at 21 (Dkt. 16). Petitioner argues that, because Mr. Granat, the vocational expert, did not base his vocational opinion on any medical source opinion except those of Dr. Chicoine

and Dr. Moore,[7] the vocational opinion elicited by the ALJ is in error. In other words, had the ALJ accepted the opinion of Mr. Granat based upon Petitioner's expert, Dr. Nilsson, the ALJ would have concluded Petitioner was disabled. Pet. Brief at 22. Petitioner argues also that the ALJ disregarded other evidence in the record regarding Petitioner's physical limitations, such as the need for frequent breaks and to change position.

The ALJ properly formed a hypothetical for the vocational expert at the hearing, and included all of Petitioner's limitations supported by substantial evidence in the record. The hypothetical need not incorporate evidence from medical sources or the Petitioner that was "permissibly discounted." The ALJ's discussion and analysis of the medical opinions, and his reasons for rejecting Dr. Nilsson's opinion, are addressed later in this Memorandum.

Next, Petitioner again contends that the hypothetical did not account for Petitioner's sporadic engagement in daily activities, and therefore, his ability to perform certain activities does not support his ability to engage in full-time work. Petitioner claims that "substantial evidence must be in the record to show that the 'claimant can do most jobs,' despite the limitations caused by the impairment. *Stout v. Sec. of Health & Human Serv.*, 579 F.Supp. 237, 240 (D. Idaho 1984). Petitioner, however, misinterprets *Stout*, where the Court considered whether the ALJ erred at step two of the sequential analysis. In that context, the Court found that 20 C.F.R. 404.1521 defined the phrase "'no

---

[7] Medical expert Dr. Moore testified at the hearing but did not otherwise examine Petitioner.

severe impairment' as the ability and aptitude necessary to do most jobs." Here, in contrast, there was a finding of "severe" impairment at step two, and thus the reasoning and analysis of *Stout* does not apply. There was, accordingly, no error committed by the ALJ by virtue of not making such a finding.

Further, the relevance of Petitioner's daily activities was considered in the context of Petitioner's credibility. The ability to engage in activities of daily living "may be grounds for discrediting the claimant's testimony" to the extent such activities contradict claims of a totally disabling impairment. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Because Petitioner testified to a degree of activity incompatible with his claims of total and utter incapacity, the ALJ was entitled to reject Petitioner's statements based upon such evidence. It is not for this Court to engage in second guessing the ALJ's credibility determination when his determination constituted a reasonable interpretation of the evidence presented. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("the ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it.").

### 3.     Medical Source Opinions

The United States Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).

*Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion about a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v.*

*Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595 (9th Cir. 1999). An ALJ also may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self -reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Reports of treating physicians submitted relative to Petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and his inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)). Clear and convincing reasons must also be given to reject a treating doctor's ultimate conclusions concerning disability, especially when they are not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

A. *Dr. Nilsson*

Petitioner first objects to the ALJ's alleged failure to properly consider Dr. Nilsson's testimony. Petitioner objects on the grounds that the ALJ improperly discredited Dr. Nilsson's testimony because he was referred and paid by Petitioner's attorney to examine Petitioner. Second, Petitioner claims the ALJ improperly discredited Dr. Nilsson's opinion because of Dr. Nilsson's conclusion Petitioner suffered a brain

injury, which injury was not documented anywhere in the record. Third, Petitioner takes issue with the ALJ's statements that Dr. Nilsson was not familiar with social security regulations and did not conduct independent testing. Petitioner argues the ALJ should have given less weight to other medical testimony in the record, and that Dr. Nilsson's opinion should have been given controlling weight.

Dr. Nilsson, a neuropsychologist, evaluated Petitioner at the request of Petitioner's attorney on April 25, 2011. Dr. Nilsson spent over three hours interviewing Petitioner, and a total of eight hours evaluating him. Because Petitioner reported falling and landing on the back of his head at an early age, Dr. Nilsson concluded Petitioner suffered severe "brain damage sustained early," which brain damage had negatively influenced Petitioner's functional capacity. As part of his examination, Dr. Nilsson administered the Beck Anxiety Inventory, the Beck Depression Inventory, the Wechsler Intelligence Scale for Children (the WISC-III), the Rey Complex Figure Test and Recognition Trial, and the Delis-Kaplan Executive Function System to test verbal fluency. Dr. Nilsson reviewed also the medical records of Dr. John Morgan, who performed a mental status examination and psychometric testing on December 27, 2010, and the same medical records considered by the ALJ. Petitioner's records dated back to 1988, from when Petitioner was incarcerated as a teenager and evaluated as part of his incarceration. Dr. Nilsson's opinion contradicts other medical reports and findings, based solely upon Dr. Nilsson's opinion that Petitioner suffered a traumatic brain injury. In Dr. Nilsson's opinion, Petitioner's symptoms are indicative of acquired brain injury, and as a result, Petitioner

would not be able to function independently. (AR 659.)

The ALJ discussed Dr. Nilsson's findings extensively, (AR 21-22), and properly rejected Dr. Nilsson's opinions citing specific and legitimate reasons supported by substantial evidence in the record. First, the ALJ rejected Dr. Nilsson's opinions regarding Petitioner's traumatic brain injury. The ALJ had records dating back to Petitioner's teenage years, including records from shortly after Petitioner claims to have suffered a fall. However, nowhere in the record was it documented that Petitioner suffered a fall giving rise to a brain injury. Petitioner never reported suffering a brain injury to any treating or examining source. The ALJ noted that Petitioner did not report a history of brain injury to Dr. Bates, Dr. Morgan, or Dr. Chicoine, each of whom conducted examinations of Petitioner in June of 2007, December 2010, and June of 2011, respectively. Further, the ALJ noted the evaluation from the State Hospital North dated February 1988, when Petitioner was thirteen years of age, did not give any indication Petitioner suffered a traumatic head injury. The ALJ cited the evidence in the record from that period indicating the results of Petitioner's IQ testing were equivalent to the results of IQ testing performed by Dr. Morgan in December of 2010. (AR 20-22.) Accordingly, the ALJ discredited Dr. Nilsson's opinion, which was formed on the basis that Petitioner was suffering from a traumatic brain injury. (AR 22.)

Next, the ALJ noted Dr. Nilsson did not perform "cognitive testing or memory testing." Petitioner contends the ALJ improperly rejected Dr. Nilsson's testimony on the grounds he did not perform any independent testing. However, the AJL did not state that

Dr. Nilsson performed no testing, only that he did not independently administer cognitive or memory tests, which is correct. Dr. Nilsson administered tests to assess anxiety, depression, and verbal fluency. But, the ALJ noted that Dr. Nilsson relied upon the memory testing and cognitive testing performed by Dr. Morgan on December 27, 2010, and that Dr. Nilsson interpreted the test results differently than did Dr. Morgan. (AR 22.)

Here, the ALJ was entitled to rely upon the opinion of Dr. Morgan based upon the medical record as a whole and to reject Dr. Nilsson's interpretation of Dr. Morgan's test results. The ALJ noted that Dr. Morgan's interpretation of the cognitive test results indicated Petitioner could understand verbal communications, that his immediate, recent and past memory abilities were within normal limits, and Petitioner could adapt to an employment environment. (AR 20-21.) The ALJ discussed Dr. Morgan's findings of average intelligence, which the ALJ noted had not changed since Petitioner's last IQ testing in 1988. (AR 22.) Further, the ALJ noted that Dr. Morgan's assessment was consistent with Petitioner's lack of any treatment for mental health disorders and the lack of any mention in the record to other treatment providers about any mental impairments caused by a brain injury. (AR 21.)[8]

Further, the ALJ discredited Dr. Nilsson's opinion based upon Petitioner's testimony about his daily activities, which the ALJ found inconsistent with Dr. Nilsson's opinions. (AR 23, 24.) The ALJ noted that Petitioner's description of his daily activities,

_____

[8] The ALJ noted that the medical records from prior evaluations concluded Petitioner's cognitive abilities indicated "no organicity," in direct conflict with Dr. Nilsson's opinion that Petitioner suffered a brain injury from a fall, which opinion was based upon Petitioner's self - reports that the ALJ found not credible. (AR 21.)

which included being able to: shop, cook, clean, travel to the employment center to fill out resumes; acquire a part-time job pulling weeds and complete community service requirements; do his own laundry; bike; socialize with others where he lived; and help his uncle, all contradicted Dr. Nilsson's opinion that, if Petitioner was left alone, he would "isolate, become socially withdrawn, and be unable to function independently." (AR 22, 24.)

Finally, the ALJ noted that Petitioner sought Dr. Nilsson's opinion through attorney referral, and Dr. Nilsson's lack of familiarity with Social Security rules and regulations. (AR 22.) However, the ALJ did not use those facts as the sole basis for rejecting Dr. Nilsson's opinion. An ALJ is permitted to question a doctor's credibility on the grounds that the physician's opinion was solicited by counsel. *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996). And, although the ALJ's observation that Dr. Nilsson was not familiar with Social Security rules and regulations is not a legitimate reason to discount Dr. Nilsson's opinion, any error was harmless because the ALJ provided other specific and legitimate reasons for discounting Dr. Nilsson's opinion. *Bray v. Comm'r o Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). The ALJ's observation about Dr. Nilsson's reason for retention is a permissible credibility determination given the plethora of medical opinions contradictory to Dr. Nilsson's opinion, and the lack of any evidence in the record of a traumatic brain injury. *See Saelee*, 94 F.3d at 523. Further, the ALJ's rejection of Dr. Nilsson's opinion was not based solely upon the fact he was retained by Petitioner's counsel and unfamiliar with Social Security rules and regulations.

The ALJ did not abuse his discretion in rejecting Dr. Nilsson's opinion given the substantial evidence in the record contradicting that opinion, and upon which the ALJ relied.

## B. *Dr. Moore and Dr. Morgan*

The ALJ gave great weight to the testimony of medical expert Dr. Margaret Moore, who testified at the July 27, 2011 hearing, and Dr. John Morgan, who examined Petitioner on December 27, 2010. An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial evidence in the record. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995.) Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when the opinions are supported by other evidence in the record and are consistent with it. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).[9] "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Morgan*, 169 F.3d at 600–601.

Dr. Morgan conducted a thorough interview with Petitioner and obtained his social

---

[9] Petitioner contends that the ALJ is not entitled to rely upon the testimony of Dr. Moore because she did not make objective observations or perform independent testing. However, Petitioner's argument is contrary to the holding in *Morgan*. Nor has Petitioner explained how Dr. Moore's opinion, which was based upon a thorough review of Dr. Nilsson's report and all the medical evidence in the record, including Petitioner's self-reports contained therein, was "compromised" because she did not listen to the audio recording of the hearing on May 12, 2011, which included Petitioner's testimony, his uncle's testimony, and Dr. Nilsson's testimony. There was ample evidence in the record containing Petitioner's self-reports of his activities to his examining physicians, and Dr. Moore had the benefit of reviewing Dr. Nilsson's report.

history. (AR 510.) Dr. Morgan administered the Wechsler Adult Intelligence Scale – IV, which indicated Petitioner tested at the average range of intellectual functioning. (AR 514; AR 20-21.)

Dr. Moore testified as a psychological expert about Petitioner's psychological impairments, and considered all of the historical information in the record as well as Petitioner's most recent medical records. Dr. Moore discussed the fact that Petitioner lived alone and independently, she discredited Dr. Nilsson's review of the medical records, and noted that Petitioner's vocational rehabilitation services review showed no indication of cognitive problems preventing employment. Dr. Moore explained her rationale in great detail as to why Petitioner did not meet or equal any of the mental health listings. Further, she relied upon Dr. Morgan's cognitive test results, which in her opinion indicated Petitioner showed strength in the non-verbal realm, and that Petitioner's verbal skills were "not bad either." (AR 25, 57.) According to Dr. Moore, Petitioner had moderate limitations in maintaining concentration, persistence and pace, and was capable of completing work on a satisfactory basis. (AR 26.)

The ALJ discussed Dr. Moore's opinions at length in his decision, (AR 24-26), and properly considered and relied upon the opinions of Dr. Moore and Dr. Morgan. For example, the ALJ noted that Dr. Moore's thorough and careful review of Petitioner's entire record, Petitioner's daily activities, other physicians' treatment notes, and the clinical findings of Dr. Morgan, supported a finding that Petitioner suffered no more than moderate psychological limitations. Further, the ALJ noted Dr. Nilsson's opinion was

largely based upon Petitioner's subjective reports, which the ALJ found not credible. (AR 27.) Other than presenting unsubstantiated arguments that Dr. Moore's opinion was not consistent with the record and was vague, Petitioner has not identified any area of error other than that he disagrees with the ALJ's findings. But the ALJ provided specific and legitimate reasons for giving Dr. Moore's opinions, which in turn relied upon the psychological testing of Dr. Morgan, great weight versus the opinions of Dr. Nilsson. The ALJ's reasons are supported by substantial evidence in the record.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

Dated: September 16, 2014

Honorable Candy W. Dale
United States Magistrate Judge